**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUL 1 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ELAINE CAMP                                    )
302 Atlantic Street, S.E., #301                )
Washington, D.C. 20032                         )
     Plaintiff,                              )
                                             )
     v.                                      )
                                             )
                                             )
THE COMMUNITY PARTNERSHIP FOR )
THE PREVENTION OF HOMELESSNESS)
801 Pennsylvania Ave., S.E., Suite 360         )
Washington, D.C. 20003,                        )
                                             )
Serve: Marlene L. Johnson, Esq.                )
       1617 Tuckerman Street, N.W.           )
       Washington, D.C. 20011                )
and                                            )
                                             )
FAMILIES FORWARD, INC.                         )
1012 14th Street, N.W.                         )
Washington, D.C. 20005                         )
                                             )
Serve: Ruby King-Gregory                       )
       1012 14th Street, N.W.                )
       Washington, D.C. 20005                )
                                             )
     Defendants.                             )
                                             )

Case: 1:08-cv-01244
Assigned To : Leon, Richard J.
Assign. Date : 7/18/2008
Description: Civil Rights-Non. Employ.

JURY ACTION

## COMPLAINT

### I.    INTRODUCTION

1.    This civil rights action is brought to vindicate the rights of Elaine Camp, a person

with a disability, under federal and local civil rights law.    Defendants herein discriminated

against Ms. Camp by refusing to accommodate her needs with respect to having an emotional

support animal while she and her children resided in a publicly-funded shelter operated by, and

under the authority of, the Defendants.

RECEIVED

JUL 1 0 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2.      While residents of New Beginnings Shelter ("New Beginnings") from September of 2005 until February of 2006, Ms. Camp and her children were harassed and threatened with eviction for having a small cat that, in the opinion of Ms. Camp's psychiatrist, was necessary to help alleviate her stress and anxiety and to enhance her ability and her children's ability to live independently.

3.      Defendant Families Forward refused to provide a reasonable accommodation for Ms. Camp and her children by waiving its "no pets" rule.

4.      Thereafter, Defendant Community Partnership for the Prevention of Homelessness ("Partnership") formally denied Ms. Camp's reasonable accommodation request to keep the cat.

5.      Defendants' actions amount to discrimination on the basis of disability, in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA").

6.      This case raises important issues concerning the administration of public agency shelter programs, including the extent to which public agencies and contractors, such as Defendants, can design programs that have the purpose or effect of diminishing the extent to which people with disabilities can enjoy necessary accommodations to rules that may limit their participation in such programs.

## II.     JURISDICTION AND VENUE

7.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental

jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiff's federal law claims and arise out of a common nucleus of related facts. Plaintiff's state law claims are related to Plaintiff's federal law claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

8.    Venue is proper in the this district pursuant to 28 U.S.C. § 1391(b)(2) in that the unlawful conduct that gives rise to these claims occurred within this district. The Court has jurisdiction over Plaintiff's action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## III.    PARTIES

9.    Ms. Camp is a resident of Washington, D.C. and the mother of three children. She has a "handicap" within the meaning of the FHA and a disability within the meaning of the ADA, Rehabilitation Act and DCHRA.[1]

10.    Defendant Families Forward, Inc. is a non-profit corporation, and is in the business of providing shelter, transitional housing and community support services for people who are homeless. Families Forward contracts with Partnership to provide emergency shelter services to District of Columbia residents. Pursuant to a contract with Partnership, Families Forward operates and is responsible for the day-to-day management of the New Beginnings Shelter located at 1448 Park Road N.W. in Washington, D.C.

11.    Defendant Partnership is a non-profit corporation established in 1989 and headquartered in Washington, D.C. Partnership manages the District of Columbia's Continuum

---

[1] This complaint uses the terms "disability" and "disabled," except when referring to the FHAA's statutory language, which uses "handicap" and "handicapped," legislative history, or in quoting previous court decisions. *See Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1146 n. 2 (9th Cir.2003). These terms are intended to have identical meanings. *See id.*

of Care on behalf of the city. Through the work of subcontractors, the D.C. Continuum of Care includes prevention services, street outreach efforts, emergency shelter, transitional housing and permanent supportive housing for individuals and families who are homeless or at risk of homelessness. On information and belief, the District of Columbia, through its Department of Human Services ("DHS"), signed a contractual agreement with the Partnership on October 1, 2004 to direct, oversee and manage the service deliveries for Families Forward, Inc. and other homeless services providers in the District of Columbia. Partnership is the sole entity that contracts with DHS to provide emergency shelter services to residents of the District of Columbia. Partnership in turn subcontracts with other organizations for the provision and the management of homeless shelters to entities such as Families Forward. In this role, the Partnership provides direct oversight and funding to New Beginnings Shelter.

## IV. **STATUTORY BACKGROUND**

12.    In 1988, Congress amended the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, through the Fair Housing Amendments Act of 1988 ("the Amendments") to afford people with disabilities greater protection from housing discrimination. The law defines "handicap" broadly and prohibits housing discrimination against individuals with physical and/or mental disabilities. In passing the Amendments, Congress specifically prohibited "the use of stereotypes and prejudice to deny critically needed housing to handicapped persons." H.R. Rep. 100-711 at 18, *reprinted at* 1988 U.S. Code Cong. & Admin. News 2173, 2189.

13.    The FHA's ban on disability discrimination reflects a "clear pronouncement of a national commitment to end the unnecessary exclusion of people with handicaps from the American mainstream." *Id.* In amending the FHA, Congress acknowledged the devastating impact that housing discrimination has on individuals with disabilities and recognized that

4

prohibition of such discrimination is absolutely essential to their inclusion in American life. *See id.*

14.    The FHA makes it illegal to discriminate on the basis of mental or physical disability in the sale or rental of housing or in the provision of services or facilities.  It also places certain affirmative obligations on those involved in providing services related to housing, including requiring that reasonable accommodations be made in rules, policies, practices, and services when such accommodations are necessary to afford individuals with disabilities an equal opportunity to use and enjoy their homes.

15.    The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and the operable regulations adopted thereunder, prohibit discrimination against people with disabilities by public entities and their contractors, such as Defendants herein, and require public entities to make "reasonable modifications in policies, practices or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

16.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, ("Section 504") and the operative regulations adopted thereunder, apply to recipients of federal funds, such as Defendants herein, and, like the FHA, prohibit discrimination against people with disabilities, and require a recipient to modify its housing policies and practices to ensure that they do not discriminate on the basis of disability.

17.    Similar to the FHA and ADA, the DCHRA prohibits discrimination and harassment on the basis of disability in all aspects of housing.  The law requires housing providers such as Defendants herein to make reasonable accommodations in rules, policies, practices or services at the request of a person with a disability when these accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling.

## V.    FACTS

18.    Because of disability and poverty, Ms. Camp and her three children became homeless in the summer of 2005. They entered an emergency shelter called "D.C. Village" in June 2005.

19.    Prior to becoming homeless, Ms. Camp had an emotional support cat whose presence in her life provided relief from the stress and anxiety associated with her mental disability.

20.    Ms. Camp did not bring her cat with her to D.C. Village because conditions there were not suitable for maintaining the cat.

21.    For approximately two months while Ms. Camp and her children were at the D.C. Village emergency shelter, the cat stayed with Ms. Camp's cousin, Evalena Cave, and Ms. Camp and her family visited with the cat to the extent they could do so.

22.    In September 2005, Ms. Camp and her children were transferred to Families Forward's New Beginnings Shelter, where they lived in a one-bedroom apartment with a living room and kitchen.

23.    Because the New Beginnings shelter was more suitable for keeping a cat, and because she and her children had suffered as a result of the diminished interaction with the cat during their time at D.C. Village, Ms. Camp brought the cat to her apartment in September 2005.

24.    The apartment that Ms. Camp and her children formerly occupied at New Beginnings, and that is the subject of this litigation, is a "dwelling" within the meaning of the FHA, 42 U.S.C. § 3602(b); constitutes a service, program or activity of a "public entity" within the meaning of the ADA, 42 U.S.C. §12131 *et seq.*; amounts to a program or activity within the

meaning of the Rehabilitation Act, 29 U.S.C. §794; and Ms. Camp's residence involves a "transaction in real property" within the meaning of the DCHRA, D.C. Code § 2-1401.02.

25.    On or about October 5, 2005, Ms. Camp had an intake interview with the site manager, Sandra Vanderhurst, at Families Forward's New Beginnings Shelter. At that time, Ms. Camp advised the site manager that she and her children all had mental disabilities, and that all took medications for those disabilities.

26.    On or about October 7, 2005, Families Forward staff conducted an unannounced inspection of Ms. Camp's room and found the emotional support cat. The site manager demanded that Ms. Camp remove the cat within one hour.

27.    Ms. Camp told the site manager that the cat was an emotional support animal, that it helped to alleviate the symptoms of her disability, and that it was necessary for her to have full use and enjoyment of the premises.

28.    The site manager responded that she could not keep the cat because of a "no pets" policy at New Beginnings.

29.    On October 12, 2005, Ms. Camp submitted a written request to Families Forward, the Partnership and to DHS for a reasonable accommodation for an exception to the "no pets" policy of New Beginnings to allow her cat to remain in her unit as an emotional support or therapy animal. A true and accurate copy of such request is attached as Exhibit 1.

30.    On October 14, 2005, Ms. Camp faxed a letter from Joel Cohen, M.D., her psychiatrist, to Families Forward, the Partnership and to DHS stating that the cat was necessary to help alleviate Ms. Camp's stress and anxiety and to enhance her ability to live independently. A true and accurate copy of Dr. Cohen's letter is attached as Exhibit 2.

31.    The same day that Ms. Camp submitted the doctor's letter, the site manager at

New Beginnings told her that her accommodation request had been denied and threatened to call the Humane Society to remove Ms. Camp's cat immediately.

    32.    On October 18, 2005 counsel for Ms. Camp sent a letter to Cornell Chappelle, the Chief of Program Operations at the Partnership, requesting that no action be taken to remove Ms. Camp's cat from the apartment until a final determination had been made on the request. The letter was also sent to Families Forward and to DHS. A true and accurate copy of this letter is attached as Exhibit 3.

    33.    On October 19, 2005, counsel for Ms. Camp spoke with Cornell Chappelle, the Chief of Program Operations at the Partnership, to discuss Ms. Camp's request. Mr. Chapelle said he would deny Ms. Camp's request because New Beginnings had a "no pet" policy, and that he would not require or authorize any exception to it. A written denial, by way of an e-mail from Mr. Chappelle, was received by Ms. Camp's counsel on October 21, 2005. A true and accurate copy of such denial is attached as Exhibit 4.

    34.    Prior to the formal denial of Ms. Camp's accommodation request on October 21, 2005, none of the Defendants told her that they were concerned about the cat's safety or immunization records. Rather, the denial was based solely upon the existence of a "no pets" rule or policy at New Beginnings and Defendants' resolute decision not to grant any accommodation to that rule or policy.

    35.    On information and belief, at the time Defendants denied Ms. Camp's request for reasonable accommodation, none of the Defendants had a written policy or procedure to govern the assessment of reasonable accommodation requests. On information and belief, during the time period in question, Defendants also failed to appoint and/or publicize the identity of an

ADA Compliance Officer or develop a grievance procedure for the resolution of disability rights complaints in the emergency shelter system.

36.     On or about November 2, 2005, Ms. Camp filed a complaint with the U.S. Department of Housing and Urban Development ("HUD") and with the D.C. Office of Human Rights ("OHR"), alleging disability discrimination.

37.     During its investigation, OHR secured the following admissions:

    a.  Families Forward does not handle requests for reasonable accommodations. If a request is made, Families Forward has a responsibility to forward the request to the Partnership.

    b.  At the time of Ms. Camp's request, Defendants had not developed a reasonable accommodation policy or procedure.

38.     Notwithstanding knowledge of the complaints filed with HUD and OHR, on November 22, 2005, Families Forward issued Ms. Camp a warning letter noting that she had "allowed a cat to remain in her room after being advised that the cat could not remain in the building."

39.     Defendants have and enforce a policy of sanctions for shelter residents who violate shelter rules. Pursuant to such policy during Ms. Camp's time at New Beginnings, a second violation could result in suspension from the shelter system for one year and a third violation could result in a permanent expulsion. A true and accurate copy of this policy is attached as Exhibit 5.

40.     Defendants' actions and omissions presented Ms. Camp with an untenable choice: in order to keep her housing at New Beginnings Shelter, she had to get rid of the emotional support animal that had successfully helped her cope with the effects of her mental disability.

41.    On or about February 2006, Ms. Camp and her children moved out of the New Beginnings apartment and into permanent housing, taking the cat with them.

42.    Defendants operate services, programs or benefits on behalf of a public entity, and therefore have obligations under the ADA.

43.    On information and belief, Defendants are recipients of federal funds, and therefore have obligations under the Rehabilitation Act.

44.    Defendants failed to provide adequate monitoring of contractors, subcontractors, and/or employees for violations of the ADA, Rehabilitation Act, the FHA, and the DCHRA.

45.    Defendants have failed in their affirmative obligations under the ADA and Rehabilitation Act to ensure that public services are offered in a manner that do not discriminate against people with disabilities.

46.    For years, the Defendants have been made aware, through legislative testimony, letters, and oral communications, that the shelter system does not comply with federal and local laws which guarantee individuals with disabilities reasonable modifications of policies, practices, and procedures and nondiscriminatory access to shelter.

47.    By letter of determination dated May 10, 2006, the Office of Human Rights found there was reasonable cause to believe that all Defendants had discriminated against Ms. Camp on the basis of disability.

51.    During the pendency of the complaint at the Office of Human Rights, the statutes of limitations under each civil rights law is tolled.

## VI.   **INJURIES SUFFERED BY MS. CAMP**

52.     Each Defendant, directly and through its agents, has engaged in a pattern or practice of discrimination against Ms. Camp in the operation of its programs.

53.     In doing the acts or in omitting to act as alleged in this Complaint, each employee or officer of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by one of the Defendants as principal.

54.     Defendants' conduct was willful, intentional and taken in reckless disregard of Ms. Camp's rights.

55.     Ms. Camp has suffered damage as the result of Defendants' actions as Defendants have intruded into her private affairs, has abrogated her right to make decisions as to the most basic aspects of life, and put in fear of being evicted from New Beginnings Shelter and, perhaps, from other shelters in the District of Columbia shelter program.

56.     As a proximate result of the Defendants' conduct, Ms. Camp has suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional and physical distress, and a deprivation of her rights to equal housing opportunity. Therefore, she is entitled to the relief requested herein.

57.     Specifically, as a consequence of Defendant's actions and her apprehensions about its motives, she lost sleep, experienced sustained anxiety and the attendant physical manifestations thereof, as well as embarrassment and humiliation.

## VII.   CLAIMS

### A.   FIRST CLAIM
### Violation of the Fair Housing Amendments Act (42 U.S.C. § 3604 *et seq.*)

58.     Plaintiff realleges and incorporates by reference each and every allegation
contained in Paragraphs 1 through 57 above.

59.     Plaintiff is disabled within the meaning of the Fair Housing Act ("FHA"), 42
U.S.C. § 3602(h) because, as alleged herein, she has mental impairments which substantially
limit one or more major life activities.

60.     Defendants are subject to the provisions of 42 U.S.C. § 3604.

61.     Defendants injured Plaintiff in violation of FHA by:

   a. Discriminating in the rental of or otherwise making unavailable dwellings because
      of disability, in violation of 42 U.S.C. § 3604(f)(1);

   b. Discriminating in the terms, conditions, or privileges of a rental of a dwelling
      because of a disability, in violation of 42 U.S.C. § 3604(f)(2);

   c. Refusing to make reasonable accommodations in rules, policies, practices, or
      services, when such accommodations were necessary to afford people with
      disabilities equal opportunity to use and enjoy a dwelling, in violation of 42
      U.S.C. § 3604(f)(3)(B); and

   d. Engaging in coercion, intimidation, threats or interference against Ms. Camp on
      account of her having exercised or enjoyed her rights under the Fair Housing Act,
      in violation of 42 U.S.C. §3617.

62.     Specifically, in administration of the District of Columbia shelter program, Defendants have promulgated and rigidly enforced against Plaintiff regulations and policies which discriminate against people with disabilities.

63.     Exceptions to "no pet" policies for people with mental disabilities are necessary to afford people with disabilities an equal opportunity to use and enjoy the dwellings offered by Defendants.

64.     Defendants' conduct proximately caused damages to Plaintiff, as set forth above.

## B.     SECOND CLAIM
### Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

65.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 64 above.

66.     Defendants receive federal financial assistance relating to the program.

67.     Defendants' operations constitute a "program or activity" within the meaning of 29 U.S.C. § 794(b).

68.     Section 504 of the Rehabilitation Act prohibits recipients of federal funding from denying to persons with disabilities the benefits provided by the recipient, or from subjecting persons with disabilities to discrimination.  (29 U.S.C. § 794.)

69.     Defendants injured the Plaintiff in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by:

      a.  Denying Plaintiff the opportunity to benefit from the program or activity because of her disability (*see also* 24 C.F.R. § 8.4(b));

b. Discriminating against Plaintiff because of her disability, including refusing to grant Plaintiff's reasonable accommodation request (*see also* 24 C.F.R. § 8.4(a));

c. Using criteria or methods of administration of their programs the effect of which discriminates because of disability and which defeat or substantially impair the objectives of the program for qualified individuals with a particular disability (*see also* 24 C.F.R. § 8.4(b)(3)); and

d. Adopting and enforcing or refusing to adopt and enforce policies and practices designed and intended to ensure that Ms. Camp has access and enjoyment of emergency shelter services in a manner equal to those without disabilities.

70.    Specifically, in implementation of the District of Columbia shelter program, Defendants have promulgated and rigidly enforced against Plaintiff policies which discriminate against individuals with mental health disabilities.

71.    Exceptions to "no pet" policies for people with mental disabilities are necessary to afford people with disabilities an equal opportunity to use and enjoy the dwellings offered by Defendants.

72.    Defendants' conduct proximately caused damages to Plaintiff, as set forth above.

### C.    THIRD CLAIM
**Violation of the Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*)**

73.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 72 above.

74.    Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity. 42 U.S.C. § 12132, *et seq.*; 28 C.F.R. pt. 35; 49 C.F.R. pts. 37 and 38.

      75.     Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C.

§ 12131(2).

      76.     Defendants the Partnership and Families Forward are public entities within the

meaning of 42 U.S.C. § 12131(1) because they are instrumentalities of the District of Columbia.

      77.     Defendants have violated the ADA by:

        a.  Denying Plaintiff the benefits of their services, programs, and activities;

        b.  Refusing to make reasonable modifications in their policies, practices or

           procedures necessary to afford Plaintiff and other individuals with disabilities

           access to the services and privileges offered by Defendants, in violation of 28

           C.F.R. § 35.130(b)(7); and

        c.  Using criteria or methods of administration of their services, programs, or

           activities, the effect of which discriminates because of disability;

        d.  Adopting and enforcing or refusing to adopt and enforce policies and practices

           designed and intended to ensure that Ms. Camp has access and enjoyment of

           emergency shelter services in a manner equal to those without disabilities;

        e.  Engaging in coercion, intimidation, threats or interference against Ms. Camp on

           account of her having exercised or enjoyed her rights under the Americans with

           Disabilities Act, in violation of 28 C.F.R. § 35.134; and

        f.  Aiding or perpetuating discrimination against persons with disabilities by

           providing significant assistance to an agency, organization, or person that

discriminates on the basis of disability in providing public entity's services or benefits.

78.    Specifically, in implementation of the District of Columbia shelter program, Defendants have promulgated and rigidly enforced against Plaintiff regulations and policies which discriminate against individuals with mental health disabilities.

79.    Exceptions to "no pet" policies for people with mental disabilities are necessary to afford people with disabilities an equal opportunity to use and enjoy the dwellings offered by Defendants.

80.    Defendants' conduct proximately caused damages to Plaintiff, as set forth above.

## D.    FOURTH CLAIM
### Violation of the District of Columbia Human Rights Act
### (D.C. Code § 2-1401.01 *et seq.*)

81.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 80, above.

82.    Defendants have injured Plaintiff in violation of the DCHRA by:

   a. Discriminating in the rental of or otherwise making unavailable dwellings because of disability

   b. Discriminating in the terms, conditions, or privileges of a rental of a dwelling because of a disability;

   c. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford people with disabilities equal opportunity to use and enjoy a dwelling; and

   d. Engaging in coercion, intimidation, threats or interference against Ms. Camp on account of her having exercised or enjoyed her rights under the DCHRA.

83.    Specifically, in implementation of the District of Columbia shelter program, Defendants have promulgated and rigidly enforced against Plaintiff regulations and policies which discriminate against individuals with mental health disabilities.

84.    Exceptions to "no pet" policies for people with mental disabilities are necessary to afford people with disabilities an equal opportunity to use and enjoy the dwellings offered by Defendants.

85.    Defendants' conduct proximately caused damages to Plaintiff, as set forth above.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an order:

1.    Accepting jurisdiction of the federal and supplemental state claims pled herein.

2.    Declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.*; the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.*, and the other provisions cited above.

3.    Awarding monetary damages to Plaintiff in an amount to be determined by the jury that would fully compensate Plaintiff for her injuries sustained by Defendants' discriminatory housing practices pursuant to the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.*; the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.*, and the other provisions cited above.

4.    Awarding statutory and punitive damages to Plaintiff in an amount to be determined by the jury pursuant to 42 U.S.C. § 3613(c)(1) and state law;

5.    Awarding reasonable costs and attorneys fees pursuant to the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.*; the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.*, and the other provisions cited above.

6.    Awarding any further relief the Court may deem just and proper.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to each and every claim for which she is so entitled.

Dated: July 10, 2008

> Respectfully submitted,
>
> *Michael Allen / AwH*
> Michael Allen (Bar No. 409068)
> (mallen@relmanlaw.com)
> **RELMAN & DANE, PLLC**
> 1225 Nineteenth Street, N.W., Suite 600
> Washington, D.C. 20036
> Telephone: (202) 728-1888
> Facsimile: (202) 728-0848
>
> Amber W. Harding (Bar No. 484130)
> (amber@legalclinic.org)
> Patricia Mullahy Fugere (Bar No. 384796)
> **Washington Legal Clinic for the Homeless**
> 1200 U Street, N.W., Third Floor
> Washington, D.C. 20009
> Telephone: (202) 328-5500
> Facsimile: (202) 328-5515
>
> Counsel for Plaintiff

**Exhibit 1**

5. I hereby certify that on the $\underline{12}^{th}$ of $\underline{October}$, 200_, I sent a copy of this Request for Reasonable Accommodation to (check all that apply):

(X) Cornell Chapelle,
The Community Partnership for the Prevention of Homelessness
801 Pennsylvania Avenue, SE, Suite 360
Washington DC 20003
        by (check all that apply): (X) fax (202) 543-5653 ( ) mail ( ) hand-delivery

(X) Ricardo Lyle, Administrator
Family Services Administration
2146 24th Place, NE
Washington, DC 20018                        541-3964
        by (check all that apply): (X) fax (202) ~~671-4454~~ ( ) mail ( ) hand-delivery

(X) Darlene Douglas
EEO Compliance Officer
Department of Human Services
64 New York Ave, NE, 6th floor
Washington, DC 20002
        by (check all that apply): (X) fax (202) 671-4381 ( ) mail ( ) hand-delivery

(X) Sandra Vanderhurst, Shelter or Intake Center Representative
Families Forward
Park Road
Washington, DC _____
        by (check all that apply): ( ) fax (202) 32 - 367 ( ) mail ( ) hand-delivery

( ) Other (please specify): _____
_____
_____
_____

6. I understand that the information obtained by the Department of Human Services and/or the shelter provider regarding my disability or the disability of my household member will be kept completely **confidential** and will only be used to decide whether to grant my reasonable accommodation request.

_Elaine Crump_                                    10/12/05
Signature of Shelter Resident/Applicant         Date
Elaine Ricks Crump                              (202) 232-9468
Printed Name                                    Telephone Number
1415 Park Rd # 101 WDC 20010                    Washington DC 20038
Address                                         City / State / Zip Code

_Please call the Washington Legal Clinic for the Homeless at (202) 328-5500_
_for more information about your legal rights._

## Emergency Shelter Request for Reasonable Accommodation

People with disabilities who live in homeless shelters have the right to request a "reasonable accommodation" from the shelter so they can use and enjoy the shelter as easily as people without disabilities can. A person with a disability is someone who has a mental or physical impairment that seriously limits a major life activity (such as breathing, caring for yourself, thinking, walking, seeing, hearing, speaking, or learning).

1. **Member of my household with a disability:**
   Name: _Elaine Ricks-Camp_   Relationship (child, spouse, self): _self_
   _and my children_

2. **Because of this disability, I would like the following reasonable accommodation(s) for my household:**

   ( ) Assistance in completing my application for shelter. Please specify: _____

   _____

   ( ) Placement in an accessible shelter unit. Please specify (first floor, wheelchair accessible, other physical requirements): _____

   _____

   (X) A change in the following rule or policy: _modify "no pets policy"_
   _at Park Road to allow my cat to stay with us_

   ( ) A transfer to a different shelter or different unit within the shelter. Please specify what type of shelter or shelter unit would meet your needs: _____

   _____

   ( ) Other. Please specify: _____

   _____

3. **I need this accommodation because:** _having a cat reduces anxiety_
   _and other symptoms of my mental illness (and the_
   _symptoms of my children)_

4. **Verification.** Please check one of the following:
   (X) I authorize the Department of Human Services and/or the shelter provider to verify that I or someone in my household has a disability and that my household has a need for the reasonable accommodation that I have requested. In order to verify this information, the Department of Human Services and/or shelter provider may contact the following physician, psychiatrist, social worker, or other health care professional and may speak to this individual about my household's disability or receive written verification of the disability:
   Health Care Provider's Name: _Dr. Joel Cohen_
   Health Care Provider's Address: _Center for Mental Health_
   _2041 Martin Luther King Jr. Ave, SE_
   _Washington, DC 20020_
   Health Care Provider's Phone: _(202) 673-2222_
   Health Care Provider's Fax: _____

   (X) I have attached verification to this Request that I or someone in my household has a disability and that my household has a need for the reasonable accommodation that I have requested.

**Exhibit 2**

10/13/05

Dear Family Forward / New Beginnings

Elaine Camp is my patient, and has been under my care since August 17, 2005. I am intimately familiar with her history and with functional limitations imposed by her disability. She meets the definition of disability under the Americans with Disabilities Act, the Fair Housing Act and the Rehabilitation act of 1973.

Due to mental illness, Elaine Camp has certain limitations regarding social interaction coping with stress/anxiety. In order to help alleviate these difficulties, and to enhance her ability to live independently and to fully use and enjoy the dwelling that you own or administer, I am providing an emotional

10/18/05

support animal that will assist
Elaine and her family in coping with
their disabilities.

I am familiar with the voluminous
professional literature concerning
the therapeutic benefits of assistance
animals for people with disabilities
such as that experienced by
Elaine Camp and family. Upon
request, I will share citations to
relevant studies, and would be
happy to answer other questions
you may have concerning my
recommendation that Elaine Camp
have an emotional support animals.
Should you have additional questions,
please do not hesitate to contact
me.

Sincerely,

Joel Colley MD
(202-678-3000)

**Exhibit 3**

# WASHINGTON LEGAL CLINIC FOR THE HOMELESS, INC.

**True Reformer Building  ·  1200 U Street, NW  ·  Third Floor  ·  Washington, D.C.  ·  20009**
Tel: (202) 328-5500  ·  Fax: (202) 328-5515  ·  e-mail: info@legalclinic.org  ·  www.legalclinic.org

**BOARD**
Wesley R. Heppler
  President
David E. Rogers
  Vice President
Robert D. Dinerstein
  Treasurer
Joan Walsh Aiker
  Secretary
Jonathan E. Abram
John D. Aldock
Fonda Allen
Cheryl K. Barnes
Jeffrey D. Bauman
Laurie B. Davis
Scott D. Gilbert
David Gilmore
Jamie S. Gorelick
Julia A. Hatcher
Robin Jacobsohn
Tom Karr
William C. Kelly, Jr.
John W. Nields
George D. Ruttinger
Jeff Schwaber
Stanley O. Scher
Effie Smith
Phyllis D. Thompson
Marsha Tucker
David Wittenstein
Luther Zeigler

**STAFF**
Patricia Mullahy Fugere
  Executive Director
R. Scott McNeilly
  Staff Attorney
Ann Marie Staudenmaier
  Staff Attorney
Sezerina Perot
  Staff Attorney
Marta F. Beresin
  Staff Attorney
Antonia K. Fasanelli
  Staff Attorney
  Crowell & Moring
  Affordable Housing Initiative
Amber W. Harding
  Steptoe & Johnson
  Equal Justice Works Fellow
Mary Ann Luby, O.P.
  Outreach Worker
Gina Kline
  Paralegal
Lewis Dent
  Administrator
Queen N. Kuenyehia
  Volunteer Coordinator
Ed Richardson
  Staff Assistant

October 18, 2005

Cornell Chapelle
The Community Partnership for the Prevention of Homelessness
801 Pennsylvania Ave, SE
Washington, DC 20003

VIA FACSIMILE AND MAIL

Re: Reasonable Accommodation (Therapy Animal) Request of Elaine Camp

Dear Mr. Chapelle:

I am writing to follow-up on the voicemail message that I left for you yesterday concerning Ms. Camp. On her behalf, I request that you advise Park Road shelter that, while the Department of Human Services and/or The Community Partnership review Ms. Camp's request for a reasonable accommodation, the shelter is not to threaten or take any action to remove Ms. Camp's cat from her shelter unit.

On October 12, 2005, Ms. Camp submitted a request for a reasonable accommodation, requesting that she be allowed to retain her cat in her shelter unit at Park Road as an accommodation of her mental illness. On October 14, 2005, Ms. Camp submitted documentation from her doctor concerning her disability and the need for the requested accommodation. Ms. Camp has not received a reply to her request.[1]

According to Ms. Camp, at around 10:30 PM on October 14th, Sandra Vanderhurst, the Director of Park Road shelter, stated that she would be calling the Humane Society and having Ms. Camp's cat immediately removed from the shelter unit. Taking such an action after a reasonable accommodation request has been made would expose the shelter, and the District, to legal liability and damages for violation of the Fair Housing Act, the Americans with Disabilities Act, and the D.C. Human Rights Act.

Please immediately inform Ms. Vanderhurst that no action should be taken to remove the cat from the premises unless and until a final determination is made that Ms. Camp is not entitled to her reasonable accommodation. I appreciate your

---

[1] Both the initial request and the supporting documentation were submitted to you, Ricardo Lyles, Darlene Douglas, and Sandra Vanderhurst via facsimile.

attention to this matter and can be reached at (202) 328-5503 if you have any questions.

Sincerely,

Amber W. Harding
Staff Attorney


CC:    Sakina Thompson, Office of the General Counsel, Department of Human Services
Ricardo Lyles, Family Services Administration
Darlene Douglas, EEO Compliance Officer, Department of Human Services
Sandra Vanderhurst, Park Road Shelter
Elaine Camp

**Exhibit 4**

## Amber Harding

| | |
|---|---|
| **From:** | Ed Richardson [edr@legalclinic.org] |
| **Sent:** | Friday, October 21, 2005 3:31 PM |
| **To:** | Amber Harding |
| **Subject:** | FW: Reasonable accommodation request |

**From:** Cornell Chappelle [mailto:cchappelle@community-partnership.org]
**Sent:** Friday, October 21, 2005 1:26 PM
**To:** Info@legalclinic.org
**Cc:** ricardo.lyles@dc.gov
**Subject:** Reasonable accommodation request

Amber,

Pursuant to Ms. Ricks-Camp request for an animal to reside in her assigned temporary shelter facility, please be advised that this request is being denied. The current shelter laws specifically states no pets are allowed. While the opinion of Ms. Ricks-Camp and others that this animal may be beneficial to she/family, it can also be not so beneficial for the other 44 families. It is noteworthy that this family, who resided at DC Village for four months prior to moving to the current site, is now requesting for this reasonable accommodation.

Thanks,

Cornell Chappelle

Chief of Program Operations

202 543-5298 x101 (p)  202 543-5653 (fax)

[x]

**Exhibit 5**

THE COMMUNITY PARTNERSHIP FOR THE PREVENTION OF HOMLESSNESS
801 Pennsylvania Avenue, SE – Suite 450
Washington, DC 20003

FAMILY RESOURCE CENTER
WARNING LETTER

Elaine Camp
**Customer Name**
**Families Forward New Beginnings**
**Shelter Name**

Shelter Rules Section 2510.2

If any member of the family unit or individual fails to comply with any rules other those set forth in sec. 2510.4. He or she shall receive a warning letter for the first offense. A one (1) year suspension for the second offense and a permanent expulsion for the third offense.

You have violated section **2506.13** of the shelter rules you received when you entered the program.

The violation was: **Failure to comply with section 2506.13  Client allowed a cat to remain in her room after being advised that cat could not remain in the building.**

If you don't agree that you committed the above violation you may request an Administrative Review/Fair Hearing.

Elain Comp                                         11/22/05
Client Signature                                   Date

Shelter Representative Signature                   Date

*Non-Compliance*

L
08-1244
RJL

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Elaine Camp

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _11001_
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

The Community Partnership for the Prevention of Homeless

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Case: 1:08-cv-01244
Assigned To : Leon, Richard J.
Assign. Date : 7/18/2008
Description: Civil Rights-Non. Employ.

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
   Plaintiff

☐ 2 U.S. Government
   Defendant

☒ 3 Federal Question
   (U.S. Government Not a Party)

☐ 4 Diversity
   (Indicate Citizenship of Parties
   in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

O

| □ G. *Habeas Corpus/ 2255*<br><br>□ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ H. *Employment Discrimination*<br><br>□ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ I. *FOIA/PRIVACY ACT*<br><br>□ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ J. *Student Loan*<br><br>□ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| □ K. *Labor/ERISA (non-employment)*<br><br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | ☒ L. *Other Civil Rights (non-employment)*<br><br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>☒ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ M. *Contract*<br><br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ N. *Three-Judge Court*<br><br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒1 Original Proceeding    □ 2 Removed from State Court    □ 3 Remanded from Appellate Court    □ 4 Reinstated or Reopened    □ 5 Transferred from another district (specify)    □ Multi district Litigation    □ 7Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS  □  ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint    **JURY DEMAND:** ☒YES    □ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    □ YES  ☒ NO    If yes, please complete related case form.

DATE  7/18/08    SIGNATURE OF ATTORNEY OF RECORD  NCD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.